# THE BOARD OF SHELLFISH COMMISSIONERS OF MARYLAND

*vs.*

## JOSEPH MANSFIELD et al.

*Oyster laws: Chapter 265 of Acts of 1914; delimination of beds; constitutionality; evidence. Statutes: construction of.*

Substantial accuracy in the location of natural oyster bars, according to the provisions made by Chapter 265 of the Acts of 1914, is feasible, and the method prescribed for the location of the natural beds presents no ground for declaring the Act unconstitutional.                          pp. 632-633

In providing for an appeal to the Court of Appeals from the judgment of the Circuit Court, in determining whether, under Chapter 265 of the Acts of 1914, a particular area of natural oyster beds was excluded in the surveys made under the Act of 1906, the Act of 1914 declares that the Court of Appeals is empowered to review "all questions of law and fact involved": *Held,* that the presence of the word "fact" does not render the Act unconstitutional, as in violation of Article 15, section 6 of the Constitution, which guarantees the right of trial by jury; the word "fact" may be eliminated and the scope of the review confined to questions of law, without impairing the general effect of the law.                          p. 634

Courts are not justified in declaring a whole Act unconstitutional, merely because one of its provisions may be open to

that objection, unless the valid and void portions are so depend-
ent upon each other as to raise the presumption that the law
would not have been passed if the invalid portion had been
omitted.                                                    p. 634

In proceedings, under the Act of 1914, to determine whether
a certain area was improperly omitted in the survey made by
the Shell Fish Commission for classification as natural oyster
beds, as defined by that Act, evidence is admissible to show that,
for more than five years prior thereto, the area in question had
been under lease to private parties, for culture and stocking of
oysters; such evidence is proper to rebut the presumption that
oysters found there within five years indicated that the area
was a natural bar.                                          p. 635

*Decided April 8th, 1915.*

Appeal from the Circuit Court for Talbot County. (Hop-
per and Adkins, JJ.)

The cause was argued before Boyd, C. J., Briscoe, Burke,
Thomas, Urner, Stockbridge and Constable, JJ.

*Wm. H. Maltbie* and *Alonzo L. Miles,* for the appellant.

*W. Thomas Kemp, George Whitelock* and *Joseph B. Seth*
(with whom was *Wm. Mason Shehan* on the brief), for the
appellees.

Urner, J., delivered the opinion of the Court.

The principal questions involved in this appeal have been
decided in the case of *Cox* v. *Revelle, ante* p. 579.    This
proceeding originated in a petition filed under the Act of
1914, Chapter 265, in the Circuit Court for Talbot County,
praying that certain oyster ground in Miles River, which
had been previously leased to a private individual upon the
theory that it was barren bottom, might be judicially deter-
mined to be a natural bed or bar, as the result of which find-

ing it would be subject to acquisition for public use by con-demnation as provided in the statute. The lessee, though summoned, did not appear and make defense, but the Board of Shellfish Commissioners filed an answer to the petition, disputing the allegations of fact and denying the constitutionality of the act upon which the proceeding was based. A demurrer to the averments of the answer which questioned the validity of the statute was sustained, and upon the issue of fact a judgment on verdict was rendered declaring the leased ground to be a natural oyster bed. The Shellfish Commissioners have appealed. In addition to the questions raised on demurrer there are several exceptions to the exclusion of evidence to be reviewed.

The first objection to the Act, as stated in the answer, is that its provisions are so defective and contradictory as to make it incapable of enforcement. In support of this position the appellants refer to the provision for the ascertainment of the outlines of natural oyster bars by testimony taken in Court. It is said that while such evidence may prove whether a certain location represented on a chart is included within a natural oyster area, it is impracticable by this means to determine the exact limits of the bar. The Act, however, does not depend upon the theory that the outlines of the submerged oyster beds are capable of being ascertained with precision. By section 90 it was provided that in the original survey to be made by the Shellfish Commissioners they should use their judgment "liberally in favor of the natural beds and bars, and allow a reasonable margin of the barren bottoms rather than encroach on a natural bed or bar," and in the same section there is a further provision that "all natural beds or bars shall be surrounded by neutral zones 200 yards wide in the Chesapeake Bay and Tangier Sound, and 50 yards wide elsewhere," and that these zones shall be leased under the Act or appropriated to private use. The Legislature evidently recognized the difficulty of defining with exactness the boundaries of the bars or beds which were intended to be excluded from the leasing system established

by the State. We see no reason to hold that a substantially accurate location of oyster fisheries in the manner authorized by the Act is not feasible, and we are certainly unwilling to declare the statute invalid on that ground. There are other provisions which are said to be open to the objection we have just noticed, but they have no relation to the case before us, and even if we discovered any force in the contention, it could not now be appropriately made the subject of decision.

It is next asserted that the Act contravenes Article 3, section 40 of the State Constitution in that it contemplates the taking of private property for a use not public, and without just compensation being first paid or tendered. This question has been considered, and determined adversely to the view here urged, in the case of *Cox v. Revelle, supra.*

Another contention is that the statute authorizes the taking of property without due process of law, and is therefore in conflict with the 14th Amendment of the Constitution of the United States and Article 23 of the Maryland Declaration of Rights. This objection is not sought to be applied to the section upon which this proceeding is founded, but to separate and distinct provisions of the law, which are not involved in the present case, and hence need not be discussed.

The further point is made that the right of trial by jury as to the issue of fact in cases of this nature is not protected by the Act, although the Constitution of the State, Article 15, section 6, declares that the right to such a trial in civil proceedings in the several Courts of law, where the amount in controversy exceeds the sum of five dollars, shall be inviolably preserved. The statute provides that upon the filing of such a petition as the one here pending, the clerk shall docket a suit at law in which the issue as to the character of the disputed ground is to be tried before a jury, or before one or more of the judges, if a jury trial is waived. An appeal may be taken by any of the parties to the Court of Appeals, which is empowered "to review all questions of fact or law involved." In committing to this Court the ultimate

determination of the issue of fact joined in the case, it is urged that the Act nullifies the right of jury trial secured by the Constitution. Assuming that the provision relied upon is applicable to a judicial inquiry under the statute as to the real character of areas alleged to be natural oyster bars and as such designed by the law to be available for public use, and assuming further that the language quoted is to be construed as meaning that the Court of Appeals should have authority to pass upon the issue of fact in such a proceeding, it does not follow that the entire Act or section, or even the whole of the clause relating to the appeal, must be held invalid. The objectionable part of the provision is contained in the single word "fact," and that term may be readily eliminated, and the scope of appellate review thus unmistakably limited to questions of law, without any impairment of the general effect of the statute. The Court is not justified in declaring the whole of an Act unconstitutional merely because one of its provisions may be open to that objection, unless the void and valid portions are so dependent upon each other as to raise the presumption that the law would not have been passed if the invalid provision had been omitted. This is a sound and familiar principle and it is clearly applicable to the present case. *Painter* v. *Mattfeldt,* 119 Md. 474; *Somerset County* v. *Pocomoke Bridge Co.,* 109 Md. 1; *Steenken* v. *State,* 88 Md. 708.

The two remaining objections on constitutional grounds refer to proceedings which the Act permits the Shellfish Commissioners to take on their own initiative for the re-survey or re-examination of oyster bottoms with a view to the more complete reservation of natural bars for the use of the public. The powers thus conferred have not been exercised with respect to the area here in dispute. This is not a voluntary re-investigation undertaken by the Commissioners for the purposes indicated, but it is an adverse proceeding by private parties under a separate provision of the law. The two methods of inquiry are entirely different and discon-

nected, and it is only the involuntary mode of procedure with which we are now concerned.

The rulings on exceptions to testimony are yet to be reviewed. It was proposed by the Shellfish Commissioners, in the course of the trial, to prove that portions of the ground in controversy had been held for the purposes of private oyster culture under licenses which were issued in 1905, by virtue of a pre-existing Act, but which have since become forfeited. The issue of fact, as defined by the Act of 1914, was whether, during the five years preceding the filing of the petition in this case, the natural growth of oysters had been so abundant, on the area in question, that the public had successfully resorted to it, continuously or at intervals, during any oyster season in that period, for the taking of oysters as a means of livelihood. The theory upon which proof was offered as to the prior use of the ground for oyster culture was that this fact might account for the presence of oysters found there subseqently, and would at least tend to rebut the inference that oysters taken during the five year period were the product of "natural growth" within the statutory meaning, especially as only barren bottoms could have been legally appropriated for oyster culture under the licenses mentioned. In our opinion the proffered evidence on this subject was relevant to the question as to whether the tract under inquiry was a natural bed or bar as defined by the Act, and the record does not enable us to say that the exclusion of such proof was not prejudicial to the interest which the appellants have in the correct determination of that issue.

While we fully concur with the trial Court in its disposition of the demurrer, we must reverse the judgment for the error we have noted in the rulings upon the exceptions.

> *Judgment reversed, with costs, and new trial awarded.*