(Decided December 19th, 1894.)

---

## MANLY DRENNEN *vs.* JOHN BANKS.

*Constitution, Art. 3, Sec. 29— Title of Statutes—Statutory Construction.*

The title of the Act of 1894, ch. 25, was an Act to repeal certain sections of the Local Code, "title, 'Cecil County,' sub-title, 'County Treasurer,' and to re-enact the same with amendments, providing for the election of a Treasurer of said county, in the year 1895, and his appointment in the meantime." The sections repealed authorized the County Commissioners to appoint a County Treasurer, who was in turn empowered to appoint deputies. The sections as re-enacted, provided that the treasurer should be elected at the general election of 1895, and that in the meantime the office should be filled by a certain named person, who should also be the Secretary of the County Commissioners; and the office of clerk of the commissioners was abolished. *Held,*

That the Act was not in violation of Art. 3, sec. 29 of the Constitution, which provides that every law enacted by the General Assembly shall embrace but one subject, and that shall be described in the title.

Where the several provisions of a law are germane to the same subject-matter, which is described in its title, it is considered as embracing but a single subject.

The grammatical construction of a statute is not always in judgment of law to be followed, particularly when by following it, and solely by reason of following it, a deliberate enactment of the Legislature would be annulled.

Appeal from the Circuit Court for Cecil County.

The case is stated in the opinion of the Court. As to the issue of the writ of *mandamus* referred to in the opinion, see the next case of *County Commissioners of Cecil County* v. *Banks.*

The cause was argued before BRYAN, MCSHERRY, FOWLER, BRISCOE, PAGE and BOYD, JJ.

*John K. Cowen* and *Albert Constable* (with whom was *Wm. S. Evans* on the brief), for the appellant.

There is nothing in the title of the Act of 1894, ch. 25, which would lead the most cautious person to suspect that the objects sought to be accomplished were many radical changes in the law concerning the office of Treasurer of Cecil County, and which in effect amount to a recasting of the whole scheme of the original statute creating the office. Litigation involving this question has generally come before the Courts in cases where the contention has been that the title of the statute was too general, and that though the title might embrace the legislative purpose, it did not express it. The reverse is the case here. The title of this Act is not general, but specific; not broad, but narrow.

In this title there is no broad and comprehensive statement of an object that might properly be held to include a multitude of indefinite but germane details to be worked out in the provisions of the Act. On the contrary, it is as

severely restrictive as language can make it.   By its narrow terms it has *affirmatively and positively excluded every object but the single one expressed.*   Certain enumerated sections were to be first repealed and then re-enacted.   The words are, "and to re-enact *the same* with amendments."   Pausing there, it is of course clear, that had nothing more been said, the only objection which could have been taken to the title would be the one unsuccessfully urged in *Meekin's case,* 50 Md. 28, namely, that the title was too broad and indefinite to describe the legislation found in the body of the Act; that though it might embrace the legislative purpose, it would not express or describe it.   But the sentence does not end with the word "amendments," but continues thus —"providing for the election of a treasurer of said county, in the year eighteen hundred and ninety-five, and his appointment in the meantime," thus clearly defining what those "amendments" were to be.   So that we have by this title a complete description of what the proposed amendments were to consist, and also of the form which the repealed sections were to bear when re-enacted.   They will, the title tells us, continue "the same" as before the repeal, with *such changes only* as are necessarily caused by the striking out of the existing provision for an appointment of a treasurer by the commissioners, and the introduction of a new provision for an election of that officer by the people.

.The word "providing" in the title qualifies the preceding word "amendments," and upon the principle of *expressio unius est exclusio alterius,* the specifications following the word "providing" gave notice that the Act related only to the election and appointment of the treasurer.   Therefore, all other changes and affirmative legislation were excluded.   The word "providing" is not redundant, but restrictive.   Affirmative words describing a particular subject are equivalent to negative words excluding other subjects.

Among the cases where this doctrine has been discussed and applied by the Courts, we would refer to the following: *Steifel* v. *Maryland Institution for the Blind,* 61 Md. 144;

*Rader* v. *Township of Union*, 39 N. J. (Law) 509; *Matter of Application of Paul*, 94 N. Y. 497; *Callaghan* v. *Chipman*, 59 Michigan, 614; *State* v. *Powers*, 14 Indiana; *The People* v. *O'Brien*, 38 N. Y. 193; *Dobbins* v. *Northampton*, 50 N. J. (Law) 496; *The People* v. *Commissioners of Highways*, 53 Barb. 70; *Dorsey's Appeal*, 72 Pa. St. 192; *Montclair* v. *Ramsdell*, 107 U. S. 147; *Cooley on Constitutional Limitations*, 144–149, (1st edition.)

*John Prentiss Poe*, *Attorney-General*, and *C. C. Crothers*, (with whom was *Clinton McCullough* on the brief), for the appellee.

The words "providing for the election of a County Treasurer of Cecil County, in the year 1895, and his appointment in the meantime," do not operate to restrict the scope of the word *amendments*, but are only descriptive of some, but not by any means all of the amendments made in the Act. And, accordingly, the title is to be read as if instead of the comma, after the word *"amendments,"* or without the comma, the conjunction *"and"* were there inserted; and thus the superadded words after the word "amendments" will be treated as put there to declare plainly the full purpose of the Act, as an Act which repealed and re-enacted the existing three sections *"with amendments," including* an amendment whereby the County Treasurer was to be elected by the people in 1895, and appointed in the meantime, but *not excluding* any other admendments. The title does not say how such intermediate appointment is to be made, but no objection to its sufficiency is made upon this ground, and this consideration demonstrates the want of real substance in the contention of the appellants.

But if it be assumed that the superadded words after the word *"amendments"* indicated that the "amendments" related to the *election* of a treasurer in 1895, and an *appointment* in the meantime, the result will be the same. An enumeration of the powers, responsibilitses and compensation of the treasurer, when elected, and of the intermediate

appointee, would still be strictly pertinent and germane, if not necessary, and there is nothing in the superadded words which, by any fair construction, can be interpreted as equivalent to the declaration that *no other amendment or alteration* was contemplated by the absolute and entire repeal of the three sections in question, beyond a provision for an *election* in 1895 and an *appointment* in the meantime. Indeed, any such interpretation would be liable to the fatal objection that it limits without reason the full meaning of the plural word "amendments."

The constitutional provision in question, relating to the titles of statutes, was first introduced in the Constitution of New Jersey in 1844. It is not a new one in Maryland, having been contained in the Constitution of 1851. A reference to the adjudicated cases in which it has been considered by this Court will show that the Court below committed no error in declaring the Act in question to be entirely valid. *Davis* v. *State,* 7 Md. 160-1 ; *Keller* v. *State,* 11 Md. 531 ; *Parkinson* v. *State,* 14 Md. 184 ; *Mayor, &c., of Annapolis,* v. *State,* 30 Md. 119 ; *Co. Comrs.* v. *Franklin R. R. Co.,* 34 Md. 163 ; *Cearfoss* v. *State,* 42 Md. 405 ; *McGrath* v. *State,* 46 Md. 633-4; *Co. Comrs. of Dorchester Co.* v. *Meekins,* 50 Md. 28 ; *2d German Am. Bldg. Asso.* v. *Newman,* 50 Md. 657 ; *Co. Comrs. of Talbot Co.* v. *Co. Comrs. of Queen Anne's Co.,* 50 Md. 245 ; *Mayor, &c., of Baltimore* v. *Reitz,* 50 Md. 579–580 ; *State* v. *Fox,* 51 Md. 414; *Co. Comrs. of Prince George's Co.* v. *Comm. of Laurel,* 51 Md. 460 ; *Mayor, &c.,* v. *Stoll,* 52 Md. 438 ; *Md. Agr. College* v. *Keating,* 58 Md. 583–4 ; *Stiefel* v. *Md. Institution,* 61 Md. 148 ; *Slymer* v. *State,* 62 Md. 243 ; *State* v. *Norris,* 70 Md. 94–5 ; *Co. Comrs. of Calvert Co.* v. *Hellen,* 72 Md. 605–6 ; *Scharf* v. *Tasker,* 73 Md. 383 ; *Gans* v. *Carter,* 77 Md. 1.

In only two of these twenty-one cases, (viz., in *Stiefel* v. *Md. Institution,* 61 Md. 148, and in *Scharf* v. *Tasker,* 73 Md. 383 ), was the constitutional objection to the statute under review sustained, whilst in quite a number of them it seemed more plausible than can be claimed here.

McSHERRY, J., delivered the opinion of the Court.

By sec. 119 of Art. 8 of the Code of Public Local Laws, the County Commissioners of Cecil County were authorized to appoint annually a county treasurer, whose duties were defined by that and the two succeeding sections. His salary and fees were fixed, and he was empowered to appoint one or more deputies, whose compensation was directed to be paid out of his salary. By the Act of 1894, ch. 25, secs. 119, 122 and 123 of Article 8 of the Local Code were repealed and re-enacted with amendments. In the new section 119, it was provided, amongst other things, that the county treasurer should be elected by the voters of Cecil County at the general election to be held in 1895, and that in the meantime the duties of the office should be discharged by John Banks, who was appointed treasurer *ad interim* by the statute. The same new section further provided, that the treasurer should have power to appoint a deputy at a fixed salary to be paid by the county; and that the treasurer himself should have his office in the room of the County Commissioners; and also that he should be their secretary and should have possession of all their books and papers; and it then abolished the office of clerk to the County Commissioners, which latter office existed under sec. 107 of Art 8 of the Local Code. It is insisted that this Act of 1894 is unconstitutional, and the reason assigned is, that its provisions are broader than its title warrants. Sec. 29 of Art. 3 of the State Constitution, with which the Act of 1894 is alleged to be in conflict, provides that " every law enacted by the General Assembly shall embrace but one subject, and that shall be described in its title." The title of the Act of 1894, ch. 25, is in these words: "An Act to repeal sections 119, 122 and 123 of Article eight of the Code of Public Local Laws, title, 'Cecil County,' sub-title, 'County Treasurer,' and to re-enact the same with amendments, providing for the election of a treasurer of said county in the year 1895, and his appointment in the meantime." The appellant, Drennen, who

claims to hold the office of Treasurer of Cecil County by appointment made by the County Commissioners under the above cited provisions of the Local Code, but by an appointment made after the Act of 1894 was adopted and had become effective, refused to surrender to the appellee Banks, who was appointed to the same office in the body of the Act of 1894, the books and papers belonging to the office of treasurer, alleging, as already stated, that the Act of Assembly, by which the appellee was so appointed treasurer, was invalid, because the General Assembly, in adopting it, failed to obey the provisions of sec. 29 of Art. 3 of the Constitution. After this refusal the appellee made application to the Circuit Court for a writ of *mandamus* to compel the surrender to him of the office and the books and papers pertaining thereto, and the writ was finally directed to be issued. From that order this appeal was taken.

Thus the sole question before us on this record is, whether the title of the Act of 1894, ch. 25, is sufficiently descriptive of the subject of the Act to sustain the enactment?

The clause of sec. 29 of Art. 3 of the Constitution, which was for the first time incorporated in the organic law of Maryland, in 1851, and which is now relied on to defeat the Act of 1894, has been repeatedly considered by this Court, beginning with the case of *Davis* v. *The State*, 7 Md. 151, decided in 1854, and coming down through a period of nearly forty years to the case of *Gans* v. *Carter and Aiken*, 77 Md. 1, decided in 1893. It has been uniformly held through the long line of cases contained in the intervening reports, that the meaning of this clause is, that "If the several sections of the law refer to and are germane to the same subject-matter, which is described in its title, it is considered as embracing but a single subject and as satisfying the requirements of the Constitution in this respect. While the title must indicate the subject of the Act, it need not give an abstract of its contents, nor need it mention the means

and method by which the general purpose is to be accomplished." *Mayor, &c.* v. *Reitz,* 50 Md. 574.

The title of the Act of 1894 consists of one sentence, comprising two members, the first of which extends to and includes the word " amendments," and the second comprehends all after the same word. It was conceded that the first member of this compound sentence, that is to say, " An Act to repeal sections 119, 122 and 123 of Article 8 of the Code of Public Local Laws, title, 'Cecil County,' sub-title, 'County Treasurer,' and to re-enact the same with amendments," is sufficiently descriptive of the subject of the Act to be free from any constitutional objections, if it stood alone, and therefore, that the whole body of the Act, with its various provisions, would have been within or embraced by that part of the title. It was also conceded, and it could not have been sucessfully disputed, that the second member of the whole compound sentence, that is to say, an Act "providing for the election of a treasurer of said county, in the year 1895, and his appointment in the meantime," is also, had this been original legislation on this subject, sufficiently descriptive of the subject of the Act to be free from any constitutional objection, if it stood alone; and therefore, that the whole body of the Act, with its various provisions, would have been within or embraced by that portion of the whole title. The numerous cases decided by this Court on this subject fully demonstrate the correctness of these two concessions; but we particularly refer to *The State* v. *Norris,* 70 Md. 91, and *Com. of Calvert Co.* v. *Hellen,* 72 Md. 603. In 70 Md. the title of the Act assailed, was "an Act to add a new section to Article 30 of the Code of Public General Laws, title, ' Crimes and Punishments,' sub-title, ' Rivers,' to come in after section 171." This Court upheld the Act, though the subject of the Act was the prevention of dredging, taking and carrying away of sand and gravel from the bed of the Potomac River, and the prescribing of a punishment for a violation of the Act. In 72 Md. the title of the Act assailed was "an Act to create

a treasurer for Calvert County, and to provide for the collection of taxes therein." This Act was upheld, though it gave the treasurer, whom it authorized the Governor to select, power to appoint a deputy, who, under the Act, became clerk to the County Commissioners.

Notwithstanding, then, that each of these two component parts of the title would be, if standing alone, sufficiently descriptive of the subject of the statute to validly include the whole Act; and notwithstanding the concession that either one of them by itself would have been a good title within the 29th section of the 3d Article of the Constitution, to sustain the entire statute, had it been original legislation, and not merely an amendatory enactment; still, it is insisted that the use of both of them in a statute making amendments to an antecedent law, results in the one title qualifying the other, and thereby produces a restricted title not broad enough to comprise many of the provisions of the enactment. If this be so, then the use of these two comprehensive titles has made a less comprehensive title than would have been furnished by the use of either one of its constituent parts alone. But this cannot be, and it makes no difference whether the statute originates new legislation or is merely amendatory of prior enactments. The legal principles applicable are the same in both instances. Two universal propositions, and it is immaterial whether their universality be metaphysical, physical or moral, whose subjects are taken according to their entire extension, because the propositions are universal, can never be equivalent to a particular proposition. If one be the contrary of the other they may be mutually nullified; but they cannot, by being used together, result in a particular proposition. So likewise, the two general titles of the Act continue to be general though used together, and do not become more restrictive than either would singly be. As both of these divisions of the title are general, and as neither is the contradictory, much less the contrary of the other, the employment of the two obviously cannot invalidate a statute which

etther branch of the compound title standing alone would have been sufficient to support. If the whole Act could have been validly included under either branch or division of the title, as has been conceded and as is undoubtedly the case, then neither of these branches or divisions can be in conflict with the other; and if neither be in conflict with the other, then neither can qualify or limit the scope of the other. Had either branch of the whole title been insufficient by itself to carry the whole Act, the use of both—the one broad enough and the other not broad enough—might properly be construed into a qualification of the more general by the more restricted one. But where both are equally broad, no such result can be predicated of their combined use without denying to the one or to the other the effect which either would confessedly have had, had it been used alone. This is essentially so, because the second branch of the title simply provides for the doing of the very things which could have been done, and validly done, under the first branch, and is, therefore, no qualification of the scope of the latter, and hence, does not restrict the subject of the Act to a narrower limit than the first branch standing alone would have indicated.

It has, however, been objected, that if the same effect be given to the title as it stands, that would undoubtedly have been given to either member or division of it singly, then such effect can only be given by disregarding the rules of grammar, or by changing the participle "providing" into the infinitive mood "to provide," and by inserting the conjunction "and" after the word "amendments." Bad grammar will not vitiate a statute. Whilst the structure of the title would have been much more artificial had it been framed in the way suggested, still grammatical construction is not always in judgment of law to be followed, particularly when by following it, and solely by reason of following it, a deliberate enactment of the Legislature would be annulled. The validity of such enactments cannot be made to depend upon mere rules of grammar. The construc-

tion must be such as will rather uphold than strike down the statute. To justify the Courts in setting aside enactments of the co-ordinate legislative department of the State Government there must be a plain and not a doubtful violation of the organic law; *Davis* v. *Helbig*, 27 Md. 452; or a palpable invasion of that fundamental principle of right and justice which rises above, restrains and sets bounds to the power of the Legislature independently of any express restriction in the Constitution itself. *The Regents, &c.*, v. *Williams*, 9 G. & J. 408. Mere doubt as to their validity, springing from or having its origin in grammatical construction, will never alone suffice.

Laying aside mere questions of grammar, it is obvious that the title of the Act of 1894, ch. 25, is as broad as is either of its consistent, constituent parts. It is equally obvious that the Act itself embraces, as its single subject the several duties, functions, powers, tenure and compensation of the County Treasurer of Cecil County, as well as the method of his selection. According to all of our former decisions, and for the reasons we have assigned, that subject is sufficiently described in the title and the Act is accordingly valid.

As much reliance was placed on the case of *Steifel* v. *Md. In.*, 61 Md. 148, we may say that nothing decided in that case is at all in conflict with the conclusion we have reached in this. There the title of the Act of 1880 was to repeal a prior Act and nothing was said about re-enacting the old law with amendments, or enacting a new one in lieu of the old. Though the title was silent as to every thing but the fact of a repeal of the antecedent law, the Legislature undertook to enact affirmative legislation in the second section of the Act, whose title purported that the Act was designed only to repeal a former law. The portion of the Act which attempted this affirmative legislation was declared invalid because no reference whatever had been made to it in the title. The title was restrictive, because it professed to be the title of only a repealing Act; but the body of the

statute went farther, and in a separate section enacted affirmative legislation.

The only objection to the Act of 1894, ch. 25, being the one we have considered, and that one being untenable, the appellee was entitled to the writ of *mandamus*, and the Circuit Court for Cecil County was right in ordering that writ to be issued.   Its order will therefore be affirmed with costs.

*Order affirmed with costs in this Court and in the Court below.*

(Decided December 19th, 1894.)