## BURROUGHS ADDING MACHINE COMPANY *vs.* STATE.

## NATIONAL CASH REGISTER COMPANY *vs.* STATE.

*Title of Statute—Sufficiency—License Fee—Sellers of Cash Registers.*

Acts 1916, ch. 704, amending Code, art. 56, is not unconstitutional and void as regards section 167 added thereby to said article, by reason of the fact that the subject of said section, the requirement that persons displaying for sale cash registers and adding machines pay an annual license fee, is not referred to in the title of said act except by the expression "licensing * * * of cash registers and adding machines," the only reasonable meaning of this latter expression being that stated in said section of the act, and the section appearing in the Code under the sub-title "Traders."                                    pp. 196, 197

Acts 1916, ch. 704, sec. 167, requiring each person, firm or corporation, having a place of business displaying cash registers or adding machines, to pay an annual license fee of an amount named, does not require the payment of more than one license fee by a person, firm or corporation maintaining more than one such place of business in the State.              pp. 197-199

The Attorney General of the State having, shortly after the passage of the statute, construed it as requiring the payment of only one license fee, and the State officials having thereafter adopted that construction in the enforcement of the act, and successive legislatures having apparently acquiesced therein, such construction should not be departed from except on imperative grounds. pp. 198, 199

On a prosecution to recover a penalty for non-compliance with a statutory requirement of the payment of a license fee, *held* that the questions of the validity and construction of the statute were sufficiently raised by special pleas to the indictment and an agreed statement of facts. p. 199

*Decided June 21st, 1924.*

Appeal from the Circuit Court for Washington County (WAGAMAN, J.).

Criminal proceedings against the Burroughs Adding Machine Company and the National Cash Register Company. From a judgment imposing a fine, each defendant appeals. Reversed.

The causes were submitted on briefs to PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and BOND, JJ.

*Robert H. McCauley* and *George Weems Williams,* for the appellants.

*Thomas H. Robinson, Attorney General, Herbert Levy, Assistant Attorney General,* and *Ellsworth R. Roulette, State's Attorney for Washington County,* for the State.

ADKINS, J., delivered the opinion of the Court.

The appeals in these cases are from judgments of the Circuit Court for Washington County whereby the appellants respectively were fined $100 for alleged violations of section 167 of chapter 704 of the Acts of 1916, codified as section 167 of article 56 of Bagby's Code.

That section reads as follows:

"Each person, firm or corporation, resident or non-resident, having a place of business displaying cash registers or adding machines, or samples, photographs or illustrations from which sales are made, shall first obtain a license therefor and shall pay an annual license fee of one hundred dollars."

The title of chapter 704 of the Acts of 1916 is as follows:

"An Act to repeal and re-enact with amendments section 59 of article 56 of the Annotated Code of Maryland, title 'Licenses,' sub-title 'Traders,' and also sections 108, 109, 110 and 111 of Article 56, title "Licenses,' sub-title 'Shows and Theatrical Exhibitions,' and to add twenty-five additional sections to said article 56 of the Annotated Code of Maryland, to follow section 163, and to be known as sections 164, 165, 166, 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187 and 188, said new sections providing for the licensing of detective agencies and agents, moving picture shows and carnivals, garages, cash registers and adding machines, typewriting machines, commercial, mercantile and mutual protective agencies, intelligent offices and employment agencies, laundries, junk dealers, trading stamp companies, wholesale dealers in farm machinery, soda water fountains, livery stables, bowling saloons, storage warehouses, check rooms, cleaning, dyeing and pressing companies, shoe-shining parlors and hat-cleaning establishments, restaurants or eating places, plumbers and gas fitters, construction firms or companies, non-resident wholesale tobacco dealers and non-resident wholesale liquor dealers."

The indictment in the one case charges

"that National Cash Register Company, a body corporate, late of Washington County aforesaid, on the 25th day of January A. D. 1924, at Washington County aforesaid, unlawfully did have a place of business wherein cash registers or samples thereof were displayed and from which sales were made without first

taking out a license therefor, as provided by the Act of Assembly in such case made and provided," &c.

The indictment in the other case was the same except that "Burrough's Adding Machine Company" was substituted for "National Cash Register Company" and "adding machines" for "cash registers."

In each case the traverser demurred to the indictment and the demurrer was overruled. Whereupon, in each case, a special plea was filed alleging that traverser was a non-resident corporation having three places of business in the State of Maryland displaying in the one case, cash registers, and in the other, adding machines, or samples, photographs or illustrations from which sales are made, and that said places of business were on the first day of May, 1923, and for some months prior thereto and ever since have been located in the Cities of Baltimore, Hagerstown and Cumberland, in the State of Maryland, and that on or about the first day of May, 1923, the traverser paid to the clerk of the Court of Common Pleas of Baltimore City, the sum of one hundred dollars and received from him a license authorizing it to transact its business as aforesaid in the State of Maryland for the period of one year from May 1, 1923, and that in accordance with said license, it has maintained said three places of business in said cities.

To this plea the State demurred and the demurrer was sustained.

Whereupon an agreed statement as to facts was filed in each case admitting all the facts set out in the plea, and the further fact that, since the passage of chapter 704 of the Acts of 1916, the State had not attempted to collect from the companies classified in section 167 of said act more than one license fee of one hundred dollars per year.

The one bill of exception in each case is to the refusal by the trial court of the two prayers offered by the traverser.

The first prayer asks for an instruction that inasmuch as the facts stated in the agreed stipulation (which are set out in the prayer) are undisputed, the traverser "is not violating

any of the laws of the State of Maryland as alleged in the indictment in this case, and the verdict of the court sitting as a jury, should be 'not guilty.' "

The second prayer is a demurrer to the evidence in a shorter form.

The contentions of appellants are:

1.   That chapter 704 of the Acts of 1916 is unconstitutional and void so far as section 167 thereof is involved "because the titling to the act does not set out the purpose of the same as containing any provision for requiring a license for the display for sale of cash registers, adding machines, etc."

2.   That section 167 of said act, properly construed, requires one license fee of $100 to be paid by each of the appellants for the privilege of conducting its business in the State of Maryland regardless of the number of stores or offices it maintains, and not a separate license for each place of business.

Both of these contentions are controverted by the State.

As to the first proposition:

In *Painter* v. *Mattfeldt*, 119 Md. 466, this Court said: "Section 29 of article 3 of the Constitution is mandatory, but the general disposition of the Court has been to give the section a liberal construction, so as not to interfere with or impede legislative action. The purposes of this provision of the Constitution are 'to prevent the Legislature from the enactment of laws surreptitiously; to prevent 'log rolling' legislation; to give the people general notice of the character of the proposed legislation, so they may not be misled; to give all interested an opportunity to appear before committees of the Legislature and to be heard upon the advisability of the proposed legislation; to advise members of the character of the proposed legislation, and to give each an opportunity to intelligently watch the course of the proposed bill; to guard against fraud in legislation, and against false and deceptive titles. These purposes have been so plainly announced in numerous opinions by this Court that a statement of the rule and the citation of cases would seem to be suffi-

cient.'"   *State* v. *McKinney,* 29 Montana, 375; *Davis* v. *State,* 7 Md. 160; *Drennen* v. *Banks,* 80 Md. 310; *Baltimore* v. *Reitz,* 50 Md. 574; *County Commissioners* v. *School Commissioners of Worcester County,* 113 Md. 305.

It is not apparent that the title of the act in question fails to meet the requirements of the constitutional provision, as measured by the purposes above enumerated, because of anything either contained in it or omitted from it.

It is true that the expression, "licensing cash registers and adding machines," is an awkward and inaccurate one; but when considered in connection with the place where it is found and in relation to the wording of the entire title, and taking into consideration the general knowledge of the uses of such machines, it is difficult to believe that it could have deceived any one, or that the failure to state more accurately in the title that one of the purposes of the act was to provide for a license tax on persons and corporations selling these machines amounted to a withholding from any member of the Legislature or from the public of the real purpose of the act in reference to these machines. The only possible meaning that "licensing cash registers and adding machines" could have other than that contained in the body of the act would be licensing the possession or use of them. As such a tax would have been as unreasonable as a license tax on the possession of a piano or cook stove it is not to be supposed that meaning would be attributed to the expression, especially under the sub-title of the Code, "Traders."

"When the cases in which it has been held that legislation was invalid because in conflict with section 29 of article 3 of the Constitution are examined it will be found, either that something wholly repugnant to the title or something altogether foreign to the subject described in the title, had been attempted to be incorporated in the body of the act in flagrant disregard of the principle announced in *Davis* v. *State.*" *Baltimore City* v. *Flack,* 104 Md. 107.

Proposition No. 2 is of a more serious nature.

Section 167 was construed by former Attorney General Ritchie, former Acting Attorney General Marbury, and more

recently by the present Attorney General, in accordance with the view of appellants. Official opinions of Attorney General (Md.), vol. 1, p. 183; vol. 3, p. 157; Brief of Attorney General in this case. The contrary construction was given by Attorney General Armstrong, Official Opinions of Attorney General, vol. 7, p. 244. Either construction is possible.

In most of the other sections of the act, a license fee is required for each place of business; whereas in section 167 and one or two others, there is no such express provision.

There is much force in the argument of appellants that apparently "the Legislature deliberately distinguished between the different classes of business upon which the license fees were imposed. When the Legislature so intended, the language of the act clearly set forth that a license fee was required for each place of business. It is a fair inference that only one license fee was required in the other cases where the act merely contained a general statement that persons or corporations conducting such a particular business should pay annually therefor a set license fee."

Former Attorney General Armstrong's opinion was based on the doctrine of "last antecedent." As frankly admitted by counsel for appellee, even under this doctrine, "the word 'therefor' as used in section 167 could apply equally as well to the words 'displaying cash registers or adding machines, or samples, photographs, or illustrations from which (that is to say, from which samples, photographs or illustrations) sales are made,' as to the words 'a place of business,' for the words 'displaying cash registers, etc.', are more immediately preceding the word 'therefor' than the words 'a place of business.'"

Attorney General Ritchie's opinion was given to the Comptroller a few weeks after the act went into effect.

In the agreed statement of facts it is stipulated that since the passage of the act the State has not attempted to collect from the companies classified under section 167 more than one license fee of $100 per year. This Court said, in *Hess* v. *Westminster Savings Bank,* 134 Md. 125, in construing a tax statute, that the "unvarying construction of the statute

for such a lapse of time ought not to be disregarded but upon the most imperious grounds." It would seem that if subsequent legislatures did not approve of the official construction of the Act of 1916 given about the time it went into effect, and the uniform practice in enforcing it, prior to the recent opinion of Attorney General Armstrong, the act would have been amended so as to make its meaning clear.

The question was sufficiently raised by the special pleas and agreed statement of facts. *Salfner* v. *State,* 84 Md. 299.

The demurrer to the pleas should have been overruled.

*Judgment reversed.*