LOUIS LEE WEILBRENNER ET AL. *v.* COMMISSION-
ERS OF BALTIMORE COUNTY.
[No. 41, January Term, 1932.]

*Decided April 4th, 1932.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, PARKE, and SLOAN, JJ.

*Edward H. Burke,* with whom were *John B. Gontrum* and *Bowie & Burke* on the brief, for the appellants.

*James P. Kelley* and *Randolph Barton, Jr.,* with whom was *Elmer J. Cook* on the brief, for the appellee.

URNER, J., delivered the opinion of the Court.

The purpose of this suit in equity by the plaintiffs, as taxpayers, is to have the County Commissioners of Baltimore County restrained from including in their annual levy, prescribed by statute, for roads and bridges, any sum for the interest and principal requirements of highway construction bonds previously issued. The appeal is from a decree dismissing the bill of complaint.

By section 592 of article 3 of the Code of Public Local Laws of Maryland (1930), it is provided: "The County Commissioners shall annually levy upon the assessable property of Baltimore County at the time of making the county levy, not less than forty cents nor more than sixty cents on the one hundred dollars for county roads and bridges. Fifty per cent. of the tax so levied and collected shall be set apart as a special road and bridge fund for the use and benefit of the election district from which it has been collected and for no other purpose. The remaining fifty per cent. together

with all other money receivable by Baltimore County for road and bridge purposes including all money payable to Baltimore County by the State of Maryland for automobile licenses and all fines and forfeitures payable to Baltimore County and all taxes collected on stocks and bonds not apportioned or assessed to any district and formerly known as the 'Unapportioned Fund' shall be and constitute a fund to be known as the General Road and Bridge Fund and may be expended for any lawful road or bridge purpose anywhere in Baltimore County and for no other purpose or purposes whatsoever."

That section, in its present form, was enacted by chapter 4 of the Acts of 1920. The levy under its provisions, and the supplemental funds to which it refers, were the only means then available for the improvement of the county's highways. By the Acts of 1922, chapter 243, the county commissioners were authorized to borrow, on bonds of the county, the sum of $750,000 annually for a period of four years, and to apply two-thirds of the amount to the purpose of "constructing and permanently improving the highways of Baltimore County, and for no other purposes." The Acts of 1927, chapter 1, provided for the creation of a further bonded debt of $2,000,-000, at the rate of $500,000 annually for the same road purposes specified in the act of 1922. There was thus made available, from the two loans, a fund of a half million dollars each year, from 1923 to 1931, for road improvements which would otherwise have had to await the slower process of financing from the taxes levied under the limitations of the statute first quoted. The interest on the bonds, and the installments of principal maturing annually as provided by the authorizing acts, have uniformly been paid out of the general road and bridge fund. The tax levies for highway purposes have averaged about forty-two cents on each $100 of assessed property value since 1923. For the present year the interest and principal payments to be made on the bonds aggregate $244,000, which is equivalent to the amount produced by approximately sixteen cents on the $100 of the road levy.

It is provided by each of the statutes under which highway

bonds were issued that the county commissioners shall levy each year a tax sufficient for the payment of the interest and maturing principal. The contention of the plaintiffs is that the tax for those purposes was not designed to be included in the levy from which the general road fund is derived, and hence the use of a portion of that fund for bond payments is said to involve its unwarranted diversion to that extent from its intended objects. According to this theory, it would be the duty of the county commissioners to levy a road and bridge tax of not less than forty cents on the $100, and a further tax, approximating sixteen cents for the current year, to provide for the interest on the outstanding bonds and the principal of those maturing in 1932. The view of the county commissioners is that payments on account of loans contracted for highway improvement are road purposes to which the general road funds may be in part lawfully applied, and the evidence in the case proves that those funds, for which this year there is a forty-one-cent levy, are adequate both for payments due on the bonds and to meet all reasonable needs for road maintenance and improvement.

When the General Assembly in 1927 authorized the second loan for road construction in Baltimore County, the commissioners had, for several years, been making payments on the first loan out of the general road fund. With apparent acquiescence in that policy, and the interpretation of pre-existing law upon which it was based, the act of 1927 merely repeated without any change the terms of the earlier statute in regard to taxation to pay the principal and interest of the loan. The implied legislative approval thus given to the demonstrated understanding of the commissioners as to the meaning and intent of that provision would be sufficient to resolve any doubt on the subject in favor of the conclusion that they were justified in pursuing the course of which this suit complains. *Leitch v. Gaither,* 151 Md. 168, 134 A. 317; *Burroughs Adding Machine Co. v. State,* 146 Md. 192, 126 A. 127. But apart from any question of subsequent sanction by the Legislature, we think the prior statutory provisions were reasonably susceptible of the interpretation adopted by

the county commissioners. When the antecedent plan of providing for road improvement by taxes alone was modified by acts enabling the county to hasten the reconstruction and extension of the highways with the proceeds of loans obtained for that purpose, the effect of that important change of policy could not be disregarded by the commissioners in determining the amount of their levies for road purposes. It was certainly not their duty to levy taxes which had become unnecessary for their road program in view of the loan legislation.

Having ascertained that a particular rate, not less than the forty-cent minimum, would be sufficient, not only for all requisite road work in addition to that for which the loan funds were provided, but also for the payments to be made on account of the loans during the year for which the tax was to be levied, it might well have been regarded as an extravagance to increase the tax rate beyond those requirements. The essential question is whether the repayment of money borrowed to improve the highways of the county is a "road purpose" to which the general road fund, produced by the road and bridge tax, is by statute expressly made applicable. In our opinion, the county commissioners correctly solved that problem. The loan funds were obtained and applied in anticipation of taxes to be thereafter levied. The work to be accomplished by the use of the borrowed money was the improvement of the public highways, and taxation was the ultimate source of payment. As the purposes for which the loans were procured, and those for which the road tax fund was to be available, were in a practical sense identical, the application of the tax fund in part to payments on account of the loans was a valid exercise of administrative judgment.

The point raised as to the right of the plaintiffs to dispute, in an equity proceeding, the action of the county commissioners now under consideration, will not be discussed, in view of the conclusion we have reached upon the question of statutory construction and official authority which the case presents.

*Decree affirmed, with costs.*